THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
IVAN JAGNJIC, Defendant-Appellant.

First Department, February 25, 1982

### APPEARANCES OF COUNSEL

*Eve Cary* of counsel (*William E. Hellerstein,* attorney),
for defendant-appellant.

*David H. Fromm* of counsel (*Mario Merola, District Attorney,* attorney), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J.

This is a most difficult situation where a heinous crime
was committed with undoubted consequent traumatic effect upon the victim. On the other hand, from the information made available to us, except for this aberrational
event, the defendant seems not to have a record of any kind
and to be an industrious person with a family which he
supports. The negotiated plea provided for an indeterminate term of imprisonment of not less than 5 years and not
more than 15 years.

If the approach is simply punishment or deterrence, then
the sentence, in my view, should not be disturbed.

On the other hand, prison will obviously not have any effect with respect to rehabilitation nor does it help his family nor the victim. There may be another way by which he may make amends. It may also be that the minimum sentence should be less with the determination as to release being left in the hands of the Parole Board.

The concurring opinion and the dissenting opinion well analyze the situation and the conflicting views. Because there has been no psychiatric evaluation, we do not have before us one aspect which might be more helpful in the final determination.

The judgment of the Supreme Court, Bronx County (LOGUEN, J.), rendered on May 19, 1980, convicting defendant, upon his plea of guilty, of two counts of aggravated sexual abuse, assault in the first degree (a violent felony offense), two counts of sexual abuse in the first degree (a violent felony offense), and endangering the welfare of a child, should be modified, on the law and the facts and in the exercise of discretion to vacate the sentence and to remand for resentence after psychiatric evaluation and after receipt of a psychiatric report.[*]

SANDLER, J. (concurring). Defendant appeals from a judgment entered upon a plea of guilty, convicting him of aggravated sexual abuse, and varied lesser related counts, and sentencing him to concurrent 5-15 and 2-6 year terms of imprisonment. The single issue on this appeal is raised by defendant's claim that the sentence is excessive. None of the relevant facts appear to be in dispute.

On January 9, 1980, defendant picked up his 10-year-old niece on her way to school, drove her to Orchard Beach where he removed the girl's clothing, and inserted first his finger and then an artificial penis strapped to his body into her vagina. The girl screamed and began to hemorrhage. The defendant first tried to stem the bleeding by pads he purchased at a drugstore. When this failed the defendant drove the girl to Jacobi Hospital where she was operated on and remained for approximately a week. The defendant, who immediately acknowledged what he had done, donated blood to his niece during her hospitalization.

---

[*] It is assumed that by this appeal the defendant has waived any privilege with respect to the use of a psychiatric report. (See *Estelle v Smith,* 451 US 454.)

These events are peculiarly of a kind that understandably excite a sense of horror. The sentencing problem is raised when this atrocious event is considered in light of the defendant's entire previous life.

The defendant, 43 years old, was born in Yugoslavia, moved to Paris where he married, and came to New York City in 1961. He has been married for 19 years. He and his wife became citizens within five years of their arrival in this country. They have one child.

The defendant has never been previously arrested. Starting with his adolescent years in Yugoslavia, he has always been gainfully employed. For the last 10 years defendant has been employed as a machinist with the Metropolitan Transportation Authority. His wife also has been steadily employed for some 16 years.

Except for this single event which resulted in the judgment of conviction, the defendant would appear to be a worthwhile, honest, industrious human being.

An obvious question is how such a person could have come to commit such a crime. The defendant told the probation officer that he was "at a loss to explain his actions" and found the entire experience "a nightmare" from which he hoped to wake up. In a case in which a psychiatric evaluation would appear to have been singularly appropriate, the defendant was sentenced without such an evaluation.

The time is surely past when an event of this kind could be quickly summed up as an evil action by a bad person who gratified his illicit desires at the expense of another. In the absence of a professional evaluation, it seems likely that in general terms the defendant suffered from an emotional disorder manifested by a sexual obsession which resulted in an atrocious act of sexual misconduct, an act apparently as offensive to his moral principles as to those of society as a whole.

I am unable to perceive any valid sentencing purpose that is served by the extremely harsh sentence imposed on this defendant. If its purpose is to manifest society's horror at what occurred, it is a sufficient answer that defendant was no less horrified by what he had done. It is unrealistic

to suppose that the sentence imposed here would deter anyone suffering from a comparable emotional disturbance from committing a similar act. If the sentencing court was concerned to prevent repetitive behavior of this kind by the defendant, and believed that a lengthy incarceration was necessary for that purpose, the record provides no adequate basis for the conclusion that such repetition was a substantial possibility or that an extended incarceration was the most appropriate response.

In short, it appears that a decent, industrious man, operating under the compulsion of a significant emotional disorder, committed a single atrocious act. On the record before us the sentence was excessive and should be reduced.

In determining the appropriate sentence, I agree that a psychiatric evaluation, even now, may well be of significant value. Accordingly, I concur in Justice KUPFERMAN's opinion and agree to vacate the sentence and remand for resentencing after a psychiatric evaluation and report.

MURPHY, P. J. (dissenting). I concur in the dissenting opinion of Justice LUPIANO and would add the following remarks.

The majority does not contend that the plea should be vacated because the defendant (i) was not criminally responsible by reason of mental disease or defect (Penal Law, § 30.05, subd 2), or (ii) was an incapacitated person (CPL 730.10, subd 1). Instead, they seek a psychiatric evaluation of the defendant to determine whether his sentence should be reduced because he may have suffered a mental aberration at the time the crimes were committed. The majority reasons that, in view of the defendant's stable and unblemished background, his crimes must have been prompted by some unknown mental defect. They further contend that this mental defect should be identified and taken into consideration as a sentencing factor.

I would agree with the general proposition that a particular defendant's entire history, including his mental condition, is relevant at sentencing. However, upon this appeal, the defendant does not contend that he was ever insane or incompetent. As the majority observes, there is no incident

in the defendant's stable background that would suggest that he was less than responsible for his criminal conduct.

There is speculation in the probation report that at the time the crimes were committed the defendant might have been having sexual difficulties with his wife and that he might have believed that he was impotent. The defendant was represented by competent counsel and had the opportunity to raise these matters at plea and sentence. He did not do so, and thus this court should not consider those matters upon this appeal.

The probation report further emphasizes the fact that, after the child had been sexually abused, the defendant told her to enter Jacobi Hospital and to inform the doctors that she had been raped by a teenager. Reportedly, the defendant had threatened to kill the child unless she related this story to the authorities. Opprobrious conduct of this sort should not swell the sympathies of the majority for the defendant nor should it serve as a predicate for inducing the majority to exercise their discretion in, *sua sponte,* searching for his possible latent mental defects. If the majority's reasoning is followed, this court would be required to order a psychiatric report in any instance where a person, with no criminal or psychiatric history, commits his first crime. Neither justice nor an economical administration of the criminal justice system obliges this court to hunt for a mitigating factor which a defendant chooses to ignore in circumstances warranting the most severe penal sanctions.

Even if the circumstances of this case justified the direction that a psychiatric report be ordered, the judgment of conviction should stand pending the receipt of that report (cf. *People v Clancy,* 39 AD2d 538). Thus, it is improper for the majority to vacate the sentence at the present time. Even if the report should happen to show that the defendant was suffering from some minor mental disturbance, his sentence may not be reduced unless the District Attorney agrees to the reduction (*People v Farrar,* 52 NY2d 302, 307, 308). Therefore, this case may not be remanded with a simple direction that the defendant be resentenced after receipt of the report. If the District Attorney does not agree to a sentence reduction, then the entire plea must be

vacated by the sentencing court and the matter must be placed down for trial. It should also be stressed that, in the probation report, it is stated that the defendant expressed no dissatisfaction with his plea of guilty. Therefore, if Criminal Term decides to vacate his plea, the defendant may actually oppose that vacatur and seek an adherence to the original bargain.

For the reasons stated herein and in the opinion of Justice LUPIANO, I would affirm the judgment of conviction.

LUPIANO, J. (dissenting). Defendant, charged in an indictment with the crimes of aggravated sexual abuse (two counts), sexual abuse in the first degree (two counts), assault in the first degree, and endangering the welfare of a child, pursuant to a negotiated plea bargain wherein the court promised to impose an indeterminate term of imprisonment of not less than 5 years and not more than 15 years, withdrew his previously entered not guilty plea and offered to plead guilty to all of the crimes charged. The People possessed defendant's video taped confession in which he acknowledged that he planned this atrocious act. At sentencing the court noted that this was defendant's first offense, that he had donated blood to his victim, that he was married for 19 years and had a steady employment record, and that the victim's condition required an operation and a hospital stay of five to six days. At sentencing the court noted that defendant who then weighed 225 pounds remained in the position whereby he inserted the rubber penis strapped to his body into his 10-year-old niece's vagina for several minutes which act resulted in hemorrhaging, the screaming victim having suffered symmetrical two degree lacerations of the posterior vaginal wall extending to the cul de sac that required sutures. The court then imposed sentence within the scope of the plea bargain of not more than 15 years and not less than 5 years' imprisonment.

It is well recognized that sentencing rests within the sound discretion of the trial court and absent extraordinary circumstances, should not be disturbed (*People v Junco,* 43 AD2d 266, affd 35 NY2d 419, cert den 421 US 951; *People v Miller,* 55 AD2d 970; *People v Dittmar,* 41

AD2d 788). "Generally, a determination as to what constitutes an appropriate sentence is a matter resting within the sound discretion of the trial court and the sentence imposed by that court should not be reduced on appeal unless there was a clear abuse of discretion * * * a trial court is in the most advantageous position to determine the proper sentence, having observed the defendant and being intimately familiar with the facts and circumstances underlying the conviction" (*People v Junco, supra,* at p 268).

Beyond cavil few crimes do more harm to the victim than the sexual abuse of a child. The crime here was especially heinous. It cannot be cavalierly disregarded that defendant's crime was *deliberate and premeditated.* Prepared with an artificial penis, defendant picked his niece up on her way to school, drove her to Orchard Beach, ordered her to remove her underwear and after some preliminaries, including the strapping of the artificial penis to his body, inserted it into his niece's vagina. In light of the circumstances of the crime and taking into consideration defendant's work record, long-term marriage, absence of a prior record and assistance rendered the victim, the trial court's sentence of defendant was fair and proper and clearly did not constitute an abuse of discretion.

The majority in order to substitute their discretion for that of the trial court must characterize the action of the latter in so sentencing defendant as an abuse of discretion. In order to do this they adopt defendant's contention that he simply "cracked" momentarily and support their conclusion with a description of defendant's psychological profile at the time of the crime *which has no objective support in the record* other than the fact of the heinous nature of the crime itself. This is unfair to the sentencing court, to the People and to the victim. We do not *know* that defendant was afflicted with a sexual obsession. We do not *know* that this horrible act was "as offensive to [defendant's] moral principles as to those of society as a whole." Expressions of remorse or horror for a crime uttered by a defendant may be sincere or insincere, but is an appellate court which has only the cold printed record before it in a better position to evaluate that sincerity than the trial court which has before it the person uttering such apology?

Absent a clear abuse of discretion by the sentencing court, there is no justification for this court's substituting its view of what constitutes adequate and fair sentencing for that of the sentencing court.

It is inconsistent to present a psychiatric evaluation of the defendant while acknowledging the absence of such psychiatric evaluation in the record. Surely, one trained in psychiatry might well pause in giving a psychiatric evaluation of defendant based on a mere reading of this record without benefit of an in-depth interview with and personal observation of the defendant. We are confronted here by the majority's earnest solicitude for the well-being of the defendant, the perpetrator of a particularly vicious premeditated sexual attack on a child who is not a stranger to him, but is related to him, to wit, his niece, and therefore one to whom it is expected he would extend care and protection. The choice of victim is itself a further indication of both the premeditation with which defendant engaged in this crime and the disregard exhibited by defendant for the accepted mores and moral principles inherent in the society of which he is a member. While a child to whom he was a stranger might exhibit fear and physically act to frustrate his endeavor to secure custody, the victim being defendant's niece was not impelled by such fear and freely and innocently accompanied the defendant, her uncle. Despite the absence of extraordinary circumstances and the lack of clear abuse of discretion by the sentencing court, the majority upsets the plea bargain agreed to by the defendant. The rationale for this result appears to be in part a disenchantment with the punitive and deterrent arguments advanced for imprisonment and implied indorsement of rehabilitation as the sole desirable end of incarceration.

The offense here inspires greater horror than the sentence received and obliges the full rigor of the Penal Law within the ambit of the negotiated plea bargain. Child abuse, in this case a particularly vicious sexual attack on a 10-year-old girl, should not be countenanced or condoned in any fashion. The condemnation of crimes against the young is deeply ingrained in the ethical and moral history of western civilization. Indeed, the Bible is replete with

references to this universal condemnation as, for example, the following scriptural passage concerning children — "Whosoever shall offend one of these little ones * * * it were better that a millstone were hanged about his neck, and that he were drowned in the depth of the sea" (Matthew, 18:6).

Our society in its collective wisdom through the operation of its criminal justice system has extended to this defendant clemency in the form of a sentence less than that which defendant might have received (a maximum of 25 years) had he been tried and found guilty. This was accomplished through a negotiated plea bargain.

The majority is dissatisfied with the benefit conferred on defendant because it is not great enough, that is they view defendant as entitled to greater consideration in the form of a further reduction in sentence — all emanating from the fact that defendant appears, apart from this premeditated heinous act, to be a law-abiding citizen. History, philosophy and religion teach us that human nature is not perfect and that justice demands a balance in her scales. Thus, society exerts its will in the form of legislative enactments characterizing that conduct which constitutes crime and delineating the appropriate scope of punishment for the particular crime. The judicial branch is given, *inter alia,* limited discretion in further particularizing the limits of punishment within such scope so as to further balance or "fine-tune" the scales of justice. In exercising this responsibility, we must be careful lest the punishment be too great or too little, always bearing in mind the rightful demand of society and the victim that the transgression be properly punished. To, in effect, mete out leniency without due regard for settled principles of law for whatever reason, does a disservice not only to society and the victim, but to all of us including the perpetrator of the crime. When the scales of justice are perceived in their dynamic balance to be clearly askew, faith in the society permitting this imbalance is lost.

Accordingly, with the guidance of the above observations and my own conscience and under *all the circumstances* delineated in the record before us I conclude that the discretion exercised by the Supreme Court in sentencing

defendant was patently sound and was not abused as a matter of law.

Succinctly stated it is clear, as a matter of law, that the sentencing court did not abuse its discretion in sentencing defendant in accordance with the plea bargain and, to this writer, it is equally clear that the substitution of this court's discretion for that of the sentencing court on this record would itself be an abuse of discretion as a matter of law.

BLOOM, J., concurs with KUPFERMAN, J.; SANDLER, J., concurs in an opinion; MURPHY, P. J., and LUPIANO, J., dissent in separate opinions.

Judgment, Supreme Court, Bronx County, rendered on May 19, 1980, modified, on the law and the facts and in the exercise of discretion, to vacate the sentence and to remand for resentence after psychiatric evaluation and after receipt of a psychiatric report.