■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ARMANDO PEDRAZA, Appellant. — Judgment of the Supreme Court, Bronx County (Daniel Sullivan, J.), rendered July 22, 1982, convicting defendant of the crimes of reckless endangerment in the first degree (two counts) and criminal possession of a weapon in the third degree and sentencing him to three concurrent terms of 1 to 3 years affirmed, and defendant is directed to surrender.

Defendant was indicted for attempted murder in the first degree (two counts), reckless endangerment in the first degree (two counts) and criminal possession of a weapon in the second degree. After a bench trial he was acquitted of the counts of attempted murder. However, he was convicted of the reckless endangerment counts and of criminal possession of a weapon in the third degree, as a lesser included count.

The facts are uncomplicated. In the early evening of April 12, 1981, the police were summoned to an apartment building located at 1144 Ward Avenue with a call of "burglary in progress". Upon their arrival they saw defendant in a heated dispute with a tenant in the building. Defendant was described as "intoxicated" and "excited". To break up the dispute the police officers placed defendant in their prowl car and drove off with him. A short distance from the scene of the altercation they removed defendant from the police vehicle and placed him in the custody of a friend who had followed in his car.

Later that evening two police officers, Officers Negron and Dowd, who were on routine radio motor patrol, received a radio run of a man with a gun at 1144 Ward Avenue. The officers, both of whom were in uniform, hastened to the scene. As they approached the vestibule of the building, a woman shouted "the cops" and defendant, who was standing in the hallway, turned around holding a gun in his left hand. As he did so Officer Dowd yelled "Police". Defendant, pointing his gun in the direction of Dowd, fired one shot. Bystanders scampered for cover. Moments later defendant emerged from the building and fired two shots at Officer Negron, who fired at defendant in return. A brief chase ensued before defendant was subdued. In the process Officer Dowd suffered a broken wrist for which he was subsequently treated at Jacobi Hospital. Upon examination of defendant's weapon it was ascertained that five shots had been fired from the gun.

The sole point at issue between us and our dissenting brethren is the sentence imposed. Because of defendant's age and his physical infirmities, the dissenters would disregard the express provisions of section 70.02 (subd 2, par [c]) of the Penal Law which mandates (with certain exceptions which the trial court felt were not pertinent) that a prison sentence must be imposed upon conviction of the crime of criminal possession of a weapon in the third degree, where such conviction is based upon subdivision (4) of section 265.02 of the Penal Law. We are aware that defendant's disabilities are such as to excite a sense of compassion. Against this, however, must be counterbalanced the fact that defendant was arrested on at least three prior occasions. In each case the original charge involved possession of firearms. The first of these charges was dismissed. The other two involve pleas to lesser charges. In each, he received a conditional discharge. Apparently, defendant has not been persuaded by the lenient treatment hitherto accorded to him that possession of an unlicensed firearm is forbidden by our law. In the case at bar it was only an accident that more serious consequences did not flow from defendant's actions.

The other issue raised by defendant we find to be without merit. In these circumstances, we are constrained to affirm the judgment. Concur — Sullivan, J. P., Ross and Bloom, JJ.

Carro and Kassal, JJ., dissent in a memorandum by Carro, J., as follows: The judgment should be modified in the interest of justice by vacating the 1- to 3-year sentence of incarceration and, in its stead, imposing a sentence of five years' probation conditioned upon his enrolling and remaining in alcoholism treatment and psychotherapy programs.

This 74-year-old defendant is near blind, partially lame and has a severe heart condition. He stands convicted of reckless endangerment in the first degree (two counts) and criminal possession of a weapon in the third degree. The facts underlying the incident are really quite pathetic.

Defendant had been drinking heavily all day on April 12, 1981. In the late afternoon or early evening he went with a friend to fix a CB radio. While there he met two young girls who picked his pocket of $900 and left the empty wallet on the floor. Naturally upset, he began arguing loudly enough that the police were called. The officer who responded, about 7:30 P.M., did not recall the nature of the dispute but he did remember Mr. Pedraza as being intoxicated and "very excited". The officer broke up the argument and drove appellant home.

A few hours later Mr. Pedraza enlisted his tenant to take him back again to try to get his money back. The tenant overheard

one of the women telling Mr. Pedraza, "we are going to give you the money back." Just then police arrived, responding to a radio run of a "man with a gun". When one officer yelled out, "police!" defendant turned and fired his pistol. The officers took cover and about 11 gunshots were exchanged. Mr. Pedraza then attempted flight but was quickly captured and disarmed. Luckily, no one had been hit by any of the flying bullets but one officer broke his wrist in his hurry to take cover.

Some background: Appellant, then 72, has poor eyesight and hearing, walks with crutches because of severe arthritis and has a host of heart ailments and complications. He told the Probation Department interviewer that he didn't realize the officers were policemen but, instead, thought there were a local gang. His neighborhood is an area with a very high incidence of violent crime and — rightly or wrongly — he carried the gun to protect his wife and himself.

Without in any way minimizing the seriousness of defendant's actions or their potential for tragedy, defense counsel offered additional medical and psychiatric evidence to buttress the Department of Probation's report, which had concluded that "A suitable fine and probation is recommended. Although he was involved in a serious crime and previously arrested for other gun related crimes, in view of his age of 72 years and his infirmities of age, the above recommendation seems appropriate."*

Since no one was actually hurt in this incident, counsel urged the court to consider appellant's physical and medical history and to exercise its discretion under section 70.02 (subd 2, par [c], cl [i]) of the Penal Law by sentencing Mr. Pedraza to a fine and probation.

The court, uncertain of the scope of section 70.02 of the Penal Law, i.e., whether "a man's physical condition at the time of sentence" constituted "the history and character of the defendant" within the meaning of the statute, sentenced Mr. Pedraza to three concurrent terms of 1 to 3 years but let him "out on parole pending a review by the Appellate Division so that they could * * * guide us as to the meaning of the expression that we have been talking about * * * [T]here are no clear-cut guidelines to indicate whether or not physical condition at the time of sentence is to be equated with undue harshness".

Hence, this court's affirmance does not provide either the guidance sought by the trial court nor the compassion called for in this case. Addressing the latter first, it seems clear that

---

* In 1974 and 1975, defendant was conditionally discharged from a disorderly conduct charge and a menacing charge, respectively. A 1973 charge of possession of a loaded firearm had been completely dismissed.

sending this massively infirm man to prison would be unduly harsh, if not fatal. Equally important, it would leave his 74-year-old wife alone and helpless in a dangerous neighborhood. The defendant has chronic problems with alcohol now, but psychiatric and social worker services are feasible and available. Appellant's past few brushes with the law are minor, and, in large measure, this Cuban refugee has lived as a solid citizen, working two jobs until his late 60's and buying a house on a mortgage. The changing neighborhood and his increasing age have effectively trapped this couple in a situation in which they are constantly afraid. I see no purpose served by incarcerating Mr. Pedraza; on the other hand, parole and certain counseling and psychiatric services would provide a compassionate means of "rehabilitation". After all, he could still be imprisoned if he violated his parole, but a year in prison would cost him and his wife far more than just his freedom. In my view, parole supervision would be the appropriate way in which to monitor Mr. Pedraza. (Cf. *People v Notey,* 72 AD2d 279; *People v Pollack,* 70 AD2d 868.)

Secondly, I believe it is wrong, as a matter of law, to affirm this conviction. It is obvious that defendant's physical and mental history are very pertinent to the provisions of section 70.02 of the Penal Law, and the trial court should be so instructed. (Hechtman, 1980 Supplementary Practice Commentary, McKinney's Cons Laws of NY, Book 39, 1983-1984 Pocket Park, Penal Law, § 70.02, p 151; cf. *People v Jagnjic,* 85 AD2d 135.) If the court did not consider these factors, it should have, and at the very least we should remand this case for resentencing with the instruction that the court may take all of the medical and psychiatric evidence into consideration. I would prefer, of course, our merely mitigating the sentence ourselves.