OPINION OF THE COURT
Stephen G. Crane, J.
The defendant stands convicted by jury verdict of one count of criminal possession of a weapon, third degree (Penal Law § 265.02 [4]). The jury acquitted defendant of the 12 other
*381 counts in the consolidated indictment. This opinion addresses the question of the limits on the sentences that may lawfully be imposed. A. UNDUE HARSHNESS
Penal Law § 70.02 (2) (c) (i) enacted by Laws of 1980 (ch 233) provides:
"[T]he sentence imposed upon a person who stands convicted of * * * criminal possession of a weapon in the third degree * * * must be a sentence to an indeterminate period of imprisonment [meaning State prison], or, in the alternative, a definite sentence of imprisonment [meaning the city penitentiary] for a period of no less than one year, except that:
"(i) the court may impose any other sentence authorized by law * * * if the court having regard to the nature and circumstances of the crime and to the history and character of the defendant, is of the opinion that such sentence would be unduly harsh”. (Emphasis added.)
Cases hardly ever articulate why a one-year sentence would be unduly harsh. (See, People v Stephen, 122 Misc 2d 592, 594, n.) Perhaps one of the best indirect discussions of undue harshness in the context of the gun law is found in People v Suitte (90 AD2d 80, 88):[1] "[W]e cannot view the new gun law as containing a blanket exception of first offenders * * * The * * * provisions for mitigation are not carte blanche for the commission of one offense free of the threat of a sentence of custodial detention. The sense of the new law is to deter all unlicensed handgun possessions, whether the offense is the first or a repeat. The special mitigatn inquiry is not intended to provide automatic probation for those without prior criminal records. The penalty to be imposed is a matter for the trial court’s broad discretion within the limits imposed by the Legislature * * * We see nothing obscene about a * * * jail sentence * * * when the defendant has a history of carrying the weapon for over seven years with knowledge of the law’s requirements.”
The Appellate Division, First Department, in People v Pedraza (107 AD2d 572, affd 66 NY2d 626), by a divided panel, *382 affirmed the indeterminate sentence of imprisonment imposed on a defendant acquitted of attempted murder but convicted of criminal possession of a weapon, third degree, and reckless endangerment, first degree. The defendant was aged and extremely infirm. His incarceration, according to the dissent, might be a death knell. (People v Pedraza, supra, at 574-575; but cf., People v Notey, 72 AD2d 279, 284-285.)
In the case at bar the defense argues that jail would be inappropriate because of the anxiety and expense defendant has already experienced in defending himself in this prosecution. Defendant’s supporters add that he would be the object of physical attack in a jail setting.
While the defendant is a contributing member of this community with a commendable employment record and an arrest-free past, other factors in his background, germane to the single offense of which he was convicted, militate against a finding of undue harshness. While free to advocate, as he has (New York Daily News, Feb. 25, 1985, at 5 et seq.), that more citizens should be trained and armed, the defendant is not free to carry a loaded firearm without a license. This he well knows since he failed in his efforts to obtain one after he was mugged on Canal Street. We learned from his statements in New Hampshire that he has purchased firearms for his friends whose identities he wants to protect. At trial we learned he has owned handguns since at least 1970, acquiring them in States where their purchases by him were lawful. In March 1985, during the pendency of this case he made preliminary efforts to purchase another gun in Florida. Moreover, defendant’s unlicensed possession in New York was not confined to December 22, 1984. He stated in New Hampshire that he had twice before pulled his firearm to frighten away people who were bothering him. He also had two handguns that he delivered to a neighbor on December 30, 1984. Finally, the court notes the fact that defendant used a quick-draw holster and ammunition designed to maximize physical injury.
Considering all relevant factors learned over the life of this case including the presentence report, psychiatric evaluations, and opposing memoranda of counsel, this court does not find that the sentence called for by Penal Law § 70.02 (2) (c) (i) would be unduly harsh.
B. "OTHER” SENTENCES
In its reference to "any other sentence authorized by law” that the court might impose on a finding that the one-year *383 sentence would be unduly harsh, Penal Law § 70.02 (2) (c) (i) must be interpreted as referring to other sentences that would be less harsh. (Emphasis added.) Otherwise, the "unduly harsh” escape valve would be meaningless. Therefore, the court will do no violence to the statutory scheme if, without finding undue harshness, it imposes another sentence that is at least equal in severity to the one year. This construction of Penal Law § 70.02 (2) (c) (i) is reinforced by the circumstance that a split sentence, i.e., a sentence of jail plus probation, was not even authorized for felonies until two years after the gun law went into effect. (Penal Law § 60.01 [2] [d], added by L 1982, ch 65 [authorizing a split sentence for the first time for a felony]; see, Hechtman, 1982 Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 60.01, 1986 Supp, at 89.) So, the "other” sentence contemplated in Penal Law § 70.02 (2) (c) (i) could not have interdicted the split sentence which did not yet exist in 1980 when the gun law was enacted. Indeed, the only "other” sentences existing in 1980 were periods of incarceration for fewer than 12 months or noncustodial sentences — all patently less severe.
C. THE "SPLIT” SENTENCE
A split sentence is no less onerous than the presumptive one year called for by Penal Law § 70.02. The provisions for conditional release (Penal Law § 70.40 [2]) permit release of an offender after serving only 60 days of a definite sentence, such as this presumptive one-year sentence.[2] When conditionally released, an offender’s sentence is interrupted and he or she is supervised by the Parole Board for one full year.
Since a conditional release is limited to persons serving a definite sentence, and a split sentence is by definition a revocable one — not a definite sentence (Penal Law § 60.01 [2]), the privilege of conditional release may be unavailable to a defendant serving a split sentence. The State Parole Board indicates that applications for conditional release are *384 granted on broad criteria[3] but that conditional release is not usually granted for split sentence inmates. Even were conditional release available on a split sentence, this would make the one-year sentence no more severe. In fact, there would in that event be a more stringent aspect to a split sentence because the defendant would be subject to supervision for the remainder of 5 years rather than the 1 year of parole supervision that the conditional releasee experiences. And, if the probationer recidivates or otherwise violates the terms of his probation, he can be resentenced for up to seven years in State prison.
Lest there be any question of the entitlement of a defendant serving a definite sentence to apply and be considered for conditional release, he has a constitutional due process right to this remedy. (See, Zurak v Regan, 550 F2d 86 [2d Cir 1977].)
The foregoing demonstrates that the one-year presumptive sentence generally operates in a milder fashion than the split sentence.
D. CONCLUSION
The court has concluded that it may lawfully impose a split sentence of six months as a condition of and to run concurrent with a period of probation of five years for this conviction of criminal possession of a weapon, third degree.
[Portions of opinion omitted for purposes of publication.]

. There, the defendant possessed in New York for IVi years an unlicensed gun he had registered in North Carolina where he had lawfully acquired it. He was married with two children. Never before convicted of any crime, he carried it in New York to protect himself in his business in a high-crime area.

. Cf., Hechtman, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.15, 1986 Supp, at 277: "It should be recognized that when this flat one year term is imposed, it doesn’t necessarily mean that the defendant will serve one year in jail. Since there are no provisions to the contrary, presumably the one-third good behavior time allowance (§ 70.30 [4] [b]) and the early conditional release option (§ 70.40 [2]) apply also to this new * * * sentence. Assuming a well behaved defendant, the mandatory one year sentence becomes a maximum eight month term and, if the Parole Board consents, he may be conditionally released after serving 60 days of his sentence.”

. "Discretionary release * * * shall not be granted merely as a reward for good conduct or efficient performance of duties while confined but after considering if there is a reasonable probability that, if such inmate is released, he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society and will not so deprecate the seriousness of his crime as to undermine respect for law.” (Executive Law § 259-i [2] [c], as derived from Correction Law former art 25 [L 1977, ch 904].)